**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-6215 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| RAVEN INDUSTRIES, INC., MARC E. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| LEBARON, JASON M. ANDRINGA, | : **SECURITIES EXCHANGE ACT OF** |
| THOMAS S. EVERIST, JANET M. | : **1934** |
| HOLLOWAY, KEVIN T. KIRBY, LOIS M. | : |
| MARTIN, RICHARD W. PAROD, and | : **JURY TRIAL DEMANDED** |
| DANIEL A. RYKHUS, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Raven Industries, Inc. ("Raven or the "Company") and the members Raven board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Raven by CNH Industrial N.V. ("CNH") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on July 19, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby CNH Industrial South Dakota, Inc. ("Merger Sub"), a wholly owned subsidiary of CNH, will merge with and into Raven with Raven surviving the merger and becoming a wholly owned subsidiary of CNH (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Raven common share issued and outstanding will be converted into the right to receive $6.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Raven stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Raven stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitor or Raven is headquartered in this District, and Raven is traded on the NASDAQ Stock Exchange, which is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Raven common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Marc E. LeBaron has served as a member of the Board since 2011 and Chairman of the Board since May 2017.

11. Individual Defendant Jason M. Andringa has served as a member of the Board since 2013.

12. Individual Defendant Thomas S. Everist has served as a member of the Board since 1996.

13. Individual Defendant Janet M. Holloway has served as a member of the Board since 2018.

14. Individual Defendant Kevin T. Kirby has served as a member of the Board since 2007.

15. Individual Defendant Lois M. Martin has served as a member of the Board since 2018.

16. Individual Defendant Richard W. Parod has served as a member of the Board since 2017.

17. Individual Defendant Daniel A. Rykhus has served as a member of the Board since 2008 and is the President and Chief Executive Officer of the Company.

18. Defendant Raven is incorporated in South Dakota and maintains its principal offices at 205 E. 6th Street, P.O. Box 5107, Sioux Falls, South Dakota 57117-5107. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "RAVN."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

SUBSTANTIVE ALLEGATIONS

A.   **The Proposed Transaction**

21. Raven, a technology company, provides various products to customers in the industrial, agricultural, geo-membrane, construction, aerospace and defense, and commercial lighter-than-air markets worldwide. It operates through three segments: Applied Technology, Engineered Films, and Aerostar. The Applied Technology segment designs, manufactures, sells, and services precision agriculture products and information management tools that enable farmers to enhance farm yields. Its products include application controls, GPS-guidance steering systems, field computers, automatic boom controls, machine automation, information management tools,

and injection systems, as well as Slingshot, a communications platform for its ag retailers, custom applicators, and enterprise farms; and services comprise high-speed in-field Internet connectivity and cloud-based data management. This segment sells its products to original equipment manufacturers and through aftermarket distribution partners. The Engineered Films segment produces plastic films and sheeting for geo-membrane, agricultural, construction, and industrial applications; and offers design-build and installation services for plastic films and sheeting. This segment sells its products directly to end-customers and through independent third-party distributors. The Aerostar segment offers high-altitude stratospheric platforms, technical services, and radar systems to provide research, communications, and situational awareness capabilities to governmental and commercial customers in the aerospace and defense, and commercial lighter-than-air markets. Raven was incorporated in 1956 and is headquartered in Sioux Falls, South Dakota.

22. On June 21, 2021, Raven and CNH jointly announced that they had entered into a proposed transaction:

> LONDON & SIOUX FALLS, S.D.--(BUSINESS WIRE)--CNH Industrial N.V. (NYSE: CNHI / MI: CNHI) today announced that it has entered into an agreement to acquire 100% of the capital stock of Raven Industries, Inc. (NASDAQ: RAVN), a US-based leader in precision agriculture technology for US$58 per share, representing a 33.6% premium to the Raven Industries 4-week volume-weighted average stock price, and US$2.1 billion Enterprise Value. The transaction will be funded with available cash on hand of CNH Industrial. Closing is expected to occur in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including approval of Raven shareholders and receipt of regulatory approvals.
>
> The acquisition builds upon a long partnership between the two companies and will further enhance CNH Industrial's position in the global agriculture equipment market by adding strong innovation capabilities in autonomous and precision agriculture technology.

"Precision agriculture and autonomy are critical components of our strategy to help our agricultural customers reach the next level of productivity and to unlock the true potential of their operations," said Scott Wine, Chief Executive Officer, CNH Industrial. "Raven has been a pioneer in precision agriculture for decades, and their deep product experience, customer driven software expertise and engineering acumen offer a significant boost to our capabilities. This acquisition emphasizes our commitment to enhance our precision farming portfolio and aligns with our digital transformation strategy. The combination of Raven's technologies and CNH Industrial's strong current and new product portfolio will provide our customers with novel, connected technologies, allowing them to be more productive and efficient."

"Our Board and Management are excited about this partnership and what it means for our future," said Dan Rykhus, President & Chief Executive Officer for Raven Industries. "For 65 years, our company has been committed to solving great challenges. Part of that commitment includes delivering groundbreaking innovation by developing and investing in our core capabilities and technology. By coming together with CNH Industrial, we believe we will further accelerate that path as well as bring tremendous opportunities and value to our customers — once again fulfilling our purpose to solve great challenges. Our relationship with CNH Industrial has expanded over decades, and we have a deep respect for one another and a shared commitment to transform agriculture practices across the world. We look forward to CNH Industrial leveraging the Raven talent and culture, as well as the Sioux Falls community, as part of their vision and future success."

"Raven Industries' capabilities, innovation culture, entrepreneurial spirit and engineering talent are impressive and will continue to thrive as part of the CNH Industrial family. Sioux Falls is and will continue to be a true center of excellence," added Wine. "We are incredibly excited to collaborate in bringing our customers more integrated precision and autonomous solutions, not only to improve productivity and profitability, but also promote more sustainable solutions and environmental stewardship. Together, our teams will create a stronger business for our employees, dealer network, and customers, enabling us to shape the future of agriculture, augment our world-leading sustainability credentials, and maximize our growth opportunities."

Headquartered in Sioux Falls, South Dakota, Raven Industries is organized into three business divisions: Applied Technology (precision agriculture), Engineered Films (high-performance

specialty films) and Aerostar (aerospace) with consolidated net sales of US$ 348.4 million for the twelve months ended January 31, 2021. The company is a global technology partner for key strategic OEMs, agriculture retailers and dealers. The transaction is expected to generate approximately US$400 million of run-rate revenue synergies by calendar year 2025, resulting in US$150 million of incremental EBITDA.

The Engineered Films and Aerostar segments are industry leaders in the high performance specialty films and stratospheric platform industries, respectively, and CNH Industrial believes they represent attractive independent businesses with excellent near and long-term potential. Accordingly, CNH Industrial plans to undertake a strategic review of each business to best position them for future success and maximize shareholder value.

CNH Industrial does not expect the proposed acquisition will have any impact on its guidance for 2021. The acquisition is expected to be funded with Group consolidated cash[1] not affecting third party debt of industrial activities[2]. Cash consideration for the transaction is not included in the free cash flow definition, and consequently it will not affect its free cash flow guidance for the FY 2021E.

Barclays and Goldman Sachs acted as financial advisors to CNH Industrial and Sullivan & Cromwell LLP as its legal advisor. J.P. Morgan Securities LLC acted as financial advisor to Raven and Davis Polk & Wardwell LLP as its legal advisor.

\* \* \*

23.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Raven's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.      **The Materially Incomplete and Misleading Proxy Statement**

24.     On July 19, 2021, Raven filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants

7

were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Raven Financial Projections*

25. The Proxy Statement fails to provide material information concerning financial projections by Raven management and relied upon by J.P. Morgan in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Raven management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for a non-GAAP (Generally Accepted Accounting Principles) financial metric: EBITDA, but fails to provide

line items used to calculate the metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

27. The Proxy Statement also fails to disclose unlevered free cash flows for fiscal years ending 2021 through January 31, 2031, which were used by J.P. Morgan to conduct the Discounted Cash Flow Analysis.

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan's Financial Analysis*

31. With respect to J.P. Morgan's *Public Trading Multiples Analysis* and the *Public Trading Multiples Sum-of-the-Parts Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analysis.

32. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company excluding the Company's Autonomy business, the Proxy Statement also fails to disclose: (i) the Company's estimated projected unlevered free cash flows for the period from April 30, 2021 through January 31, 2031 excluding the Company's Autonomy Business; (ii) the projected terminal values for the Company; (iii) the inputs and assumptions underlying the use of terminal growth rates of 1.5% to 2.5%; (iv) the inputs and assumptions underlying the range of discount rates ranging from 9.25% to 10.25%, (v) Raven's net debt as of April 30, 2021; and (vi) the number of fully diluted shares outstanding of Company shares.

33. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company's Autonomy business, the Proxy Statement also fails to disclose: (i) the Company's estimated projected unlevered free cash flows for the period from April 30, 2021 through January 31, 2031 for the Company's Autonomy business; (ii) the projected terminal values for the Company; (iii) the inputs and assumptions underlying the use of terminal growth rates of 2.5% to 3.5%; (iv) the inputs and assumptions underlying the range of discount rates ranging from 16.00% to 17.00%,

10

(v) Raven's net debt as of April 30, 2021; and (vi) the number of fully diluted shares outstanding of Company shares.

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

41.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.  The Individual Defendants acted as controlling persons of Raven within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Raven, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Raven, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Raven, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 21, 2021                    **MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*